# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

**WILLIE E. ROBINSON,**

    Petitioner,

vs.

                                          **CASE NO. 4:09cv51-RH/WCS**

**WALTER McNEIL,**

    Respondent.

                              /

## REPORT AND RECOMMENDATION

      This is a petition for writ of habeas corpus filed by Willie E. Robinson pursuant to 28 U.S.C. § 2254.  Doc. 1.  Petitioner challenges his convictions after a jury trial for trespass, sexual battery involving serious physical force, and aggravated battery in the Circuit Court of the Second Judicial Circuit, in and for Leon County, Florida, case number 2004-CF-1048.  *Id*.  Respondent filed an answer and the record in paper form.  Doc. 9.  References herein to exhibits are to the record.  Petitioner filed a traverse.  Doc. 15.  Respondent concedes that the petition was timely filed.  Doc. 9, p. 8.

**Grounds One, Two, and Three**

      Petitioner contends that his trial attorney was ineffective "for advising him that consent was not a valid defense to the crime of sexual battery."  Doc. 1, p. 7 (p. 8 on

ECF).  He also contends that his attorney interferred with his right to testify, presumably to establish the defense of consent.  Id.  Finally, he faults counsel for not calling Jason Thomas to testify, to establish the defense of consent.  Id.  Respondent addresses the merits of these interrelated claims since the same claims were raised in Petitioner's Rule 3.850 motion.  Doc. 9, pp. 8-15.  The claims are related and will be addressed together.

For an ineffectiveness of counsel claim, the "clearly established" standard is set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  Under Strickland, "[a] convicted defendant making a claim of ineffective assistance of counsel must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."  466 U.S. at 690, 104 S.Ct. at 2066.  In determining whether counsel gave adequate assistance, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  466 U.S. at 690, 104 S.Ct. at 2066.  Petitioner has a heavy burden, as he must show that "no competent counsel would have taken the action that his counsel did take."  Fugate, 261 F.3d at 1217 (citation omitted).

The trial docket reflects that on March 25, 2004, public defender Gina Ramos was initially appointed to represent Petitioner.  Ex. A, p. 1.  Gina Ramos apparently left the public defender's office.  Ex. C, R. 36.  On May 19, 2004, a new public defender was added, Joel Remland.  Ex. A, p. 2.  In December, 2004, Petitioner filed a pro se motion to have another public defender appointed.  Ex. C, R. 20-24.  On January 4, 2005, after a hearing on Petitioner's motion to change counsel, a conflict attorney was appointed,

James Banks.  *Id.* and Ex. C, R. 28.  Robert Morris of that firm actually took the case, but he eventually had difficulties with Petitioner and moved to withdraw.  Ex. C, R. 51-52.  On August 29, 2005, another conflict attorney, Frank Sheffield, was appointed.  Ex. C, R. 52.  The trial began on March 30, 2006, and Petitioner was represented by Frank Sheffield.  Ex. D, pp. 1-2.

Petitioner's Rule 3.850 motion sheds additional light upon the specifics of these interrelated claims.  Ex. M, R. 1-13.  Petitioner alleged in his Rule 3.850 motion: "It had been an ongoing battle with all attorneys of record concerning the consent defense." *Id.*, R. 6.  He alleged that had he been called to testify, he would have testified that at 5:28 p.m. on February 17, 2004, he received a call on his cellphone from Jason Thomas.  *Id.*  Thomas wanted to buy ten "Ecstasy" tablets for himself "and a female," later identified as the victim.[1]  *Id.*  Petitioner said he could not come right away, and Thomas and he spoke again several times that evening.  *Id.*  At 11:20 p.m., Petitioner said he called Thomas and told him he was "on the way to meet the female to whom he was to deliver the drugs."  *Id.*, R. 6-7.  He asserts that when he arrived at the location identified by Thomas, he met the victim, who walked to Petitioner's car with him.  *Id.*, R. 7.  Petitioner asserts that the victim asked to be given the drugs in exchange for sex, "where she took off her panties and was going to sit on Defendant's erect penis."  *Id.*  Petitioner alleged that he decided not to "continue in the sex act" due to an odor allegedly coming from the victim.  *Id.*  He alleges that he refused to give the victim the

---

[1] Her name is not be used here to protect her privacy.  She will be referred to as the victim as Petitioner was convicted.

drugs, "and an argument ensued, which resulted in Defendant using one of [the victim's] shoes to hit her in the face until she exited his car." *Id*. He alleges that Thomas would have confirmed that these telephone calls occurred. *Id*. Petitioner alleges that he told attorney Remland this evidence, and Remland told him that "there was not a consent defense to sexual battery . . . ." *Id.*, R. 8.

Petitioner argues that the defense of consent would have been successful in part because there were semen stains from at least three other men on the victim's sheets, but a semen stain traceable to Petitioner was not found. *Id.*, R. 9. He also argues that the victim said that her assailant had tried to penetrate her anus using Jergen's lotion, and "probably" wiped off the Jergen's lotion using a t-shirt on the floor, but there was no evidence of Petitioner's DNA on such a t-shirt. *Id.*, R. 10-11. He argues that while there was evidence that the assailant had rummaged through things in the victim's kitchen and purse, no fingerprints were found anywhere in the victim's apartment. *Id.*, R. 10-11. He argues that while there was evidence of footprints outside the apartment, left in the dirt after a recent rain, there was no evidence of muddy foot prints in the victim's apartment. *Id.*, R. 11. He points out that none of his DNA (hair, semen) was found in the victim's apartment. *Id*. Petitioner argues that this would support his testimony that he did not enter the victim's apartment as she testified. *Id*.

The Rule 3.850 court denied these claims without an evidentiary hearing. Ex. M, R. 14-17. In part the court reasoned: "Any alleged failure to properly advise Defendant of the consent defense is harmless, because Defendant, by his own admission, knew about the consent defense long before trial counsel was appointed to his case and tried

to persuade at least two other attorneys to present it." *Id.*, R. 16. That finding is supported by the allegations Petitioner made in his Rule 3.850 motion.

The court noted that earlier in the case, Petitioner had intended to assert an alibi defense, but then decided not to present an alibi and consented to the trial strategy of his attorney. Ex. M, R. 15. That finding is supported by the record attached to the order. Attachment B, R. 57 (p. 278 of the transcript). The court noted that there had been talk of an alibi defense, but Sheffield said that while they had a witness, they had decided not to call the witness to prove an alibi, and Defendant said he was in agreement. *Id.* Further, it is noted that the fact that Petitioner felt he had an alibi defense significantly undermines his current contention that he was present but the victim gave consent.

The court then noted that the trial evidence, testimony from the victim, was that Petitioner:

> gained entry into the apartment through an unsecured door, assaulted the victim with a shoe so viciously as to break her nose, then anally raped her. (Attachment B at 69-77; 82).

*Id.*, R. 15. The court found that the defense of consent "was not a viable option" from "even a cursory review of the record." *Id.* The court noted that Petitioner and the victim did not know each other, "she was beaten severely during the attack, screamed throughout it, rushed upstairs to her neighbor to report she had been assaulted, and immediately called the police." *Id.*, citing Attachment B at 78-81 (R. 37-40). The court concluded that Petitioner's attorney could not be found ineffective "for failing to pursue an impossible or futile strategy." *Id.*

The trial evidence is exactly as the trial court found it to be, and the citations to the record are accurate. Further, a nurse did a rape examination and took a swab of the victim's anal area. Ex. M, attachment B, p. 82 (R. 41). Semen containing DNA was found in that area, consistent with the testimony of the victim, not on or in the victim's vagina, as Petitioner would have testified had he presented a consent defense. The DNA from the semen taken from the anal area of the victim matched Petitioner's DNA with a confidence level of about one in a million, with the lowest level one in 100,000, and the highest one in ten million. Ex. D, R. 207-212.

As to the claim that counsel would not let Petitioner testify, the trial court found that the claim was

> conclusively refuted by the record. The court engaged in an extensive colloquy with Defendant regarding his right to testify at two separate points during the trial (Attachment B at 182-183; 276-278). He indicated he understood his rights, the pros and cons of testifying, and that he was accepting the advice of counsel not to testify.[2] The Court gave Defendant an opportunity to make his own decision of whether he wanted to take the stand. He represented to the Court that he alone was choosing not to do so.
>
> [2] The Court notes Defendant had eleven prior felony convictions at the time of trial.

Ex. M, R. 16. These findings are supported by the record, copies of which were attached to the order. In particular, the trial court explained to Petitioner that if he were to testify, the jury would learn of his many prior felony convictions. *Id.*, Attachment M, R. 56 (p. 277 of the transcript).

The trial court rejected the claim that Petitioner's counsel was ineffective for failing to call Jason Thomas as a witness. Ex. M, R. 16. The court reasoned that since

the defense of consent was not viable, the failure to call Thomas as a witness would not have changed the outcome. *Id.* The court also pointed out that Petitioner specifically told the court that he agreed with his attorney's decision not to call any witnesses. *Id.*, R. 17. The court concluded:

> Additionally, considering the overwhelming evidence of guilt, including the victim's testimony, DNA evidence, a shoeprint from a relatively rare pair of shoes in an unusually small size, and cell phone records showing Defendant was in the area of the victim's apartment and a gap during the time of the crime, there is no reasonable probability that Thomas' testimony would have made a difference in the outcome of the proceeding.

*Id.*

A petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

§ 2254(d); Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000); Ramdass v. Angelone, 530 U.S. 156, 120 S.Ct. 2113, 2119-20, 147 L.Ed.2d 125 (2000). Petitioner has not made this showing.

**Certificate of Appealability**

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. § 2254 Rule 11(b).

I find no substantial showing of the denial of a constitutional right. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483-84, 120 S.Ct. 1595, 1603-04, 146 L.Ed.2d 542 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, I recommend that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." The parties may make argument as to whether a certificate should issue by objections to this report and recommendation.

**Conclusion**

Accordingly, it is **RECOMMENDED** that 28 U.S.C. § 2254 petition for writ of habeas corpus filed by Willie E. Robinson challenging his convictions after a jury trial for trespass, sexual battery involving serious physical force, and aggravated battery in the Circuit Court of the Second Judicial Circuit, in and for Leon County, Florida, case number 2004-CF-1048, be **DENIED WITH PREJUDICE** and that a certificate of appealability be **DENIED** pursuant to § 2254 Rule 11(a).

**IN CHAMBERS** at Tallahassee, Florida, on May 18, 2011.

s/ William C. Sherrill, Jr.
WILLIAM C. SHERRILL, JR.
UNITED STATES MAGISTRATE JUDGE

### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**